OPINION
{¶ 1} Defendant-appellant Mary Ann Ullom, n.k.a. Mary Ann Mason, appeals from the decision of the Columbiana County Domestic Relations Court modifying child support as between appellant and plaintiff-appellee Robert Allen Ullom. The issue presented in this appeal is whether the trial court abused its discretion in granting a 48% deviation from the presumptively correct amount of child support. For the reasons stated below, the decision of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} This case has previously been before this court twice.Ullom v. Ullom, 7th Dist. No. 01CO33, 2002-Ohio-3005 (UllomI); Ullom v. Ullom, 7th Dist. No. 02CO46, 2003-Ohio-6728
(Ullom II). The facts are a combination from the two previous decisions.
 {¶ 3} Appellant and appellee are the parents of two minor children: Thomas and Shawn. The parties were divorced after 11½ years of marriage. At the time of the divorce, a shared parenting plan was adopted. However, four years after the plan was adopted, appellee filed a motion to modify allocation of parental rights and responsibilities. He sought an order designating himself as the primary residential parent of Thomas. The parties entered into an agreement titled "Amended Memorandum of Understanding" (Memorandum). The Memorandum provided that during the week, Thomas would reside with appellee and Shawn would reside with appellant. On weekends, the children would be together with the parties alternating weekends with the children. The case then proceeded before the trial court on the issue of support. The court used the shared parenting plan worksheet to determine child support. Per the worksheet, the court ordered appellee to pay $355.37, plus processing fees, per child per month ($724.94 per month total).
 {¶ 4} Appellee appealed the June 25, 2001 judgment entry to this court. (Ullom I.) He argued that the trial court erred in using the shared parenting worksheet to determine support instead of using the split parenting worksheet. In the alternative, appellee argued that the court failed to deviate from the calculated child support considering the parties' extraordinary circumstances. In Ullom I, we held that the parties Memorandum was ambiguous because it contained conflicting provisions as to whether the parties simply modified the shared parenting plan or whether they implemented a split-parenting plan. Ullom I,
2002-Ohio-3005, at ¶ 12-14. Thus, we remanded the case for a determination of whether the Memorandum was a modification of the existing parenting plan or an implementation of the new plan. Id. We instructed the trial court that if it determined the parties merely modified the shared parenting plan, the parties should be allowed to present evidence of deviation from the statutory child support award due to the time the child would be spending with each parent. Id. at ¶ 14. Also, we instructed the trial court that, regardless, whether it determined that the parties modified a shared parenting plan or adopted a split parenting plan, it was to use the worksheet that corresponded with the parenting plan it ordered. Id.
 {¶ 5} Upon remand, the trial court held a hearing. It found the parties intended to enter into a modification of the original shared parenting plan. However, when calculating child support the trial court used the split-parenting plan. Using this worksheet, the court ordered appellee to pay $370.97 per month, plus processing fees.
 {¶ 6} Appellant appealed from this order arguing that the trial court incorrectly used the wrong worksheet and that it abused its discretion in deviating from the presumptively correct child support amount. (Ullom II). In Ullom II, we held that the trial court erred in using the wrong worksheet. Ullom II,2003-Ohio-6728, at ¶ 18. We stated that the clear mandates of the statute and of our previous decision were that if the trial court found that the parties entered into a shared parenting plan, then the shared parenting plan worksheet was required to be used. Id. at ¶ 16-17. Likewise, we stated that if the trial court found that the parties entered into a split parenting plan, then the split parenting plan worksheet was required to be used. Id.
 {¶ 7} We did not address appellant's second argument about deviating from the presumptively correct child support amount. Id. at ¶ 22. We stated any deviation argument was premature at that time. Id.
 {¶ 8} Thus, in accordance with our opinion, we reversed and remanded the case back to the trial court. We instructed the trial court to calculate child support under the shared parenting worksheet. Id. We stated that once it calculated the actual annual obligation, it may then determine whether a deviation is appropriate by following R.C. 3119.22 and 3119.23. Id.
 {¶ 9} Upon remand, the trial court used the shared parenting worksheet to calculate the child support obligation. It found that appellee's actual obligation was $8,528.77. The court then granted a deviation of $4,077.15, which is a 48% deviation. The trial court stated that the reason for the deviation was that each party has one child with them 100% of the time and, thus, appellant must maintain a full-time household for the one child. It then stated, "A deviation recognizes that the plaintiff/father has to maintain a household just as the defendant/mother does for one of the children. Under R.C. 3119.23 the Court finds that there is extended parenting time because of the shared parenting arrangement noting that each party maintains 100% of one child less whatever companionship time each party has with the other child. This Court considers this a factor to be considered under R.C. 31119.23(D)(P)." 12/30/03 J.E. Appellant timely appeals from this decision raising one assignment of error.
 ASSIGNMENT OF ERROR {¶ 10} "The trial court abused its discretion and acted against the manifest weight of the evidence when it granted a forty-eight percent deviation from the presumptively correct amount of child support because of equal time spent with the children and the `need to maintain a home' where:
 {¶ 11} "(1) The court of appeals had previously ordered that a parent under a shared parenting plan is not entitled to an automatic credit for the time the child is residing with that parent;
 {¶ 12} "(2) The trial court ignored the equitable and specifically enumerated statutory factors in R.C. 3119.23 that favored the obligee, including that the obligor's financial resources exceeded the obligee's, the obligor's actual income was four times greater that the obligee's imputed income; and
 {¶ 13} "(3) The obligor presented no evidence and the record did not contain evidence of special and unusual needs, significant in-kind contributions, extraordinary costs associated with parenting time, the physical and emotional condition and needs of the child, responsibilities, or other factors on which to justify a deviation."
 {¶ 14} This assignment of error is divided into two arguments. The first argument is that the trial court did not follow the law of the prior case. Appellant contends that the trial court gave an automatic credit to the father for the time he spends with Thomas, even though our previous decision stated that appellant could not receive an automatic credit. In the second argument, appellant maintains that the record does not support the trial court's conclusion that a deviation should be granted. This argument is an alternative to the first argument. It is based on the premise that the deviation was not an automatic credit, but was rather a finding of extraordinary circumstances. Each argument is addressed separately.
 {¶ 15} In Ullom I we stated:
 {¶ 16} "A parent who is ordered to pay child support under a shared parenting plan is not entitled to an automatic credit for the time the child is residing with that parent. Hubin v. Hubin
(Aug. 29, 2000), 10th Dist. No. 99AP-1156, citing Pauly v.Pauly (1997)], 80 Ohio St.3d 386 [1997-Ohio-105]. A trial court may consider extraordinary circumstances and other factors to deviate the child support obligation. R.C. 3119.24(A)(2). Extraordinary circumstances include the amount of time the children spend with each parent, the ability of each parent to maintain adequate housing and the amount of expense such parent sustains. Hubin, 10th Dist. No. 99AP-1156; R.C. 3119.24(B)(1)."Ullom I, 2002-Ohio-3005, at ¶ 14.
 {¶ 17} This is a correct statement of the law. The Ohio Supreme Court explains:
 {¶ 18} "R.C. 3113.215(B)(6)[1] does not provide for an automatic credit in child support obligations under a shared parenting order. However, a trial court may deviate from the amount of child support calculated under R.C. 3113.215 if the court finds that the amount of child support would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child.
 {¶ 19} "Thus, only after consideration of the extraordinary circumstances of the parents and other factors set forth in R.C. 3113.215(B)(3) may a trial court deviate from the amount of child support listed in line 24 of the worksheet and reduce the obligor's child support obligations accordingly. Rather than requiring an automatic credit in all instances, this method permits a court to make an evaluation on a case-bycase basis and to deviate when it finds it is in the best interest of the child. In this manner, a court is able to take into account the specific facts of each case." Pauly, 80 Ohio St.3d at 389.
 {¶ 20} Therefore, appellant's statement is correct that our previous holding would not permit the trial court to give an automatic credit for the time the child spent with the father. However, her contention that the trial court gave an automatic credit to appellee is incorrect.
 {¶ 21} In the journal entry, the trial court states that each party has one child with them 100% of the time and each parent must maintain a full-time household for one child. Thus, according to the trial court, a deviation in the support amount recognizes that the father has to maintain a household just as the mother has to maintain a household. Accordingly, it found that under R.C. 3119.23 there is extended parenting time. It then stated, "The Court finds based on these factors that it would be unjust and inappropriate to require the plaintiff/father to pay 100% of the support obligation. It would not be in the best interest of either child because this would leave less money for the plaintiff/father to maintain a household for the one child he has parenting of." 12/30/03 J.E.
 {¶ 22} Thus, the trial court considered the factors enumerated in R.C. 3119.23 and found a deviation was warranted in accordance with those factors. It did not grant an automatic credit as appellant suggests. Accordingly, appellant's first argument that the trial court did not follow the law of the case fails.
 {¶ 23} In holding so, our analysis now turns to whether the record supports the trial court's deviation. It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144.
 {¶ 24} When a court calculates child support, it is required to use the correct worksheet and the basic child support schedule to calculate the child support. This initial calculation produces a rebuttable presumption of the proper amount of child support. R.C. 3110.03; Marker v. Grimm (1992), 65 Ohio St.3d 139, 141;Berthelot v. Berthelot, 154 Ohio App.3d 101, 2003-Ohio-44519, at ¶ 24. The court then may deviate from this rebuttably presumed amount after considering the factors in R.C. 3119.23. If the court deviates, it must enter three items in the journal: (1) the amount of child support calculated pursuant to the schedule and worksheet through the line establishing the actual annual obligation; (2) its determination that the presumed amount would be unjust or inappropriate and would not be in the best interests of the child; and (3) findings of fact supporting that determination. R.C. 3119.22; Marker, 65 Ohio St.3d at 143.
 {¶ 25} In this matter, the trial court used the correct worksheet, it established the actual annual obligation and it determined this presumed amount would be unjust or inappropriate and would not be in the best interests of the children. Thus, the first two elements are met and we are left to determine whether the record contains facts supporting the deviation.
 {¶ 26} Upon reversing the case in Ullom I, we stated that if the trial court found that the shared parenting plan was modified then it was to hold a hearing at which appellee would be permitted to present evidence in support of deviation. The hearing was held on July 17, 2002. At this hearing, most of the evidence appellee presented had to do with his belief that a split parenting arrangement had replaced the shared parenting plan. (Tr. 4-8). However, he did testify that his eldest son was now living with him 100% of the time. (Tr. 5). Appellant, on the other hand, testified that despite the fact that her eldest son was living with appellee, her expenses had not changed. (Tr. 16). She further testified that she is unaware of any of appellee's extraordinary expenses. (Tr. 16). She stated that she still purchases things for the eldest child for school, such as clothes. (Tr. 16).
 {¶ 27} The court granted the deviation in accordance with R.C. 3119.23(D) and (P). Section (D) states the court can consider extended parenting time or extraordinary costs associated with parenting time. Section (P) states that the court can consider any other factor it deems relevant.
 {¶ 28} The above testimony and evidence shows that appellee has extended parenting time with the eldest child due to the living arrangement. While there was no direct testimony as to the change in costs that are associated with this extended parenting time, it is logical that the costs will change. As appellee points out and as the trial court found, both appellant and appellee must maintain a full-time household for one child since one child is living with each one 100% of the time.
 {¶ 29} Appellant argues that the 48% deviation was not warranted based simply upon the fact that appellee must maintain a full-time household for one child. She contends that the cost of maintaining a household for a visiting child is no different from maintaining a household for a child that resides 100% of the time with the parent. Furthermore, she states, that her cost of maintaining a household for just one child instead of two did not decrease when the eldest child began residing with appellee.
 {¶ 30} While her statements may be true, it is presumed that when a child resides with a parent 100% of the time that parent will use the support payments to insure that the child has all of the necessities in life, i.e. food, shelter and clothes. Carnesv. Kemp, 3d Dist. No. 2-03-10, 2003-Ohio-5884, at ¶ 6 (stating that generally the support is paid to the residential parent to be used to pay for food, shelter, clothes, etc.). Therefore, when the time spent with a child changes as drastically as it did in this case, i.e. going from spending less than 50% of the time with appellee to spending 100% of the time with appellee, a trial court does not abuse its discretion in deviating the amount of child support based upon the extended parenting time and the maintenance of the household.
 {¶ 31} Furthermore, in a recently decided case, we held that the trial court did not abuse its discretion in deviating from the rebuttably presumed amount based upon parenting time. Linamv. Linam, 7th Dist. No. 02CO60, 2003-Ohio-7001, at ¶ 32. In support of our position, we cited to Hubin and explained that the Tenth District found that based upon the 60/40 shared parenting plan, a deviation was warranted. Id., citing Hubin,
10th Dist. No. 99AP-1156.
 {¶ 32} Accordingly, given the fact that the eldest child is spending 100% of the time with appellee, the trial court's decision to deviate by time spent was not unreasonable, arbitrary, or unconscionable.
 {¶ 33} For the foregoing reasons, the decision of the trial court is hereby affirmed.
Waite, P.J., concurs.
Donofrio, J., concurs.
[1] As was explained in Ullom I, R.C. 3113.215 is the predecessor to most of the child support statutes, which are now located at R.C. 3119.01 et seq. As such, prior court analysis and interpretation of the predecessor statute's language is applicable.